THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MITCHELL J. DAVIS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COLE HAAN LLC, a Delaware limited liability company,<br><br>Defendant. | NO. 2:26-cv-02463-TL<br><br>PLAINTIFF'S MOTION TO REMAND<br><br>NOTED ON MOTION CALENDAR:<br>Friday, October 9, 2026 |



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

## I. INTRODUCTION

Defendant, as the party that brought this case to this Court, has not met—and cannot meet—its burden of establishing Article III standing because the complaint does not allege a concrete injury-in-fact under controlling Supreme Court and Ninth Circuit precedent. Because this Court lacks subject matter jurisdiction, the Court must remand.

Defendant's notice of removal is devoid of any mention of this Court's Article III jurisdiction or how Plaintiff's allegations satisfy Article III's concrete injury requirement. *See* Dkt. 1. Were Defendant to advance an Article III standing theory, it would rest on the premise that an alleged violation of Washington's Commercial Electronic Mail Act ("CEMA"), RCW 19.190 *et seq.*, itself constitutes a concrete injury. That premise is inconsistent with controlling precedent. Under *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021), a statutory violation confers federal standing only where the plaintiff's alleged injury bears a "close relationship" to a harm traditionally recognized as providing a basis for suit at common law. The Ninth Circuit recently clarified that this inquiry requires courts to "look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail, to a *specific* common-law tort." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). This rigorous analysis requires a close fit between the *individual plaintiff's* allegations and "the key elements that shape the harm proscribed by [a particular] common-law tort." *Id.* at 792.

Plaintiff alleges that he received marketing emails with false or misleading subject lines. Plaintiff does not allege nuisance or anything akin to a harm recognized at common law. Receipt of allegedly misleading advertising does not bear a close relationship to any historically recognized tort. Because Defendant—as the removing party—cannot demonstrate a concrete injury sufficient to invoke federal jurisdiction, remand is required.

## II. BACKGROUND

Defendant markets and sells apparel under the Cole Haan brand in the State of Washington. Compl. ¶ 1. This case concerns one aspect of Defendant's marketing tactics—its



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

transmission of commercial emails with false or misleading subject lines to Washington residents. *Id.* ¶¶ 2–4. Specifically at issue is Defendant's transmission of mass marketing emails with subject lines that fundamentally misrepresent the duration of a promotion by either, 1) describing a specific, limited-time promotion that is not, in fact, limited to the timeframe described, or 2) misrepresenting the end date for the promotion by tricking consumers into thinking that a promotion will end sooner than it actually will. *Id.* ¶¶ 14, 17–20, 22–23. Plaintiff claims that he merely received Defendant's marketing emails, not that he read, relied on, or was deceived by them. *Id.* ¶¶ 34–35, 38.

On June 10, 2026, Plaintiff filed a class action complaint in King County Superior Court on behalf of himself and other Washington residents who received Defendant's false and misleading emails. Plaintiff alleges that Defendant's practices violate CEMA, which prohibits the transmission of commercial emails with false or misleading information in the subject line to Washington residents. RCW 19.190.020(1)(b); *Brown v. Old Navy*, LLC, 567 P.3d 38, 42 (Wash. 2025); Compl. ¶¶ 57–63. That CEMA violation, in turn, constitutes a per se violation of Washington's Consumer Protection Act, RCW 19.86 *et seq*. Compl. ¶¶ 64–75. Defendant removed the action to this Court on July 13, 2026. Dkt. 1.

## III. ARGUMENT

### A. This Court must remand if Defendant fails to meet its burden of establishing that Article III standing exists.

Removal of a state-court action under 28 U.S.C. § 1441 is permissible only if the action could have originally been filed in federal court. *See Renteria-Hinojosa v. Sunsweet Growers, Inc.,* 150 F.4th 1076, 1091 (9th Cir. 2025); 28 U.S.C. § 1441(a). A district court is required to remand the case back to state court if, after removal, it determines that it lacks subject matter jurisdiction. *Sauk-Suiattle Indian Tribe v. City of Seattle,* 56 F.4th 1179, 1189 (9th Cir. 2022) ("Section 1447(c) states that a district court *shall* remand a removed case when it concludes that it lacks subject matter jurisdiction." (emphasis in original)). A federal court lacks



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

jurisdiction where a plaintiff lacks Article III standing. *See Nat'l Family Farm Coal. v. United States EPA*, 966 F.3d 893, 908 (9th Cir. 2020) ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit.") (quoting *City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015)). In those circumstances, a remand to state court is required. *See Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956, 970 n.8 (9th Cir. 2018) ("As a general rule, if the district court is confronted with an Article III standing problem in a removed case—whether the claims at issue are state or federal—the proper course is to remand for adjudication in state court.").

The burden of establishing removal jurisdiction is on the proponent of federal jurisdiction. *See Abrego v. Dow Chem. Co.,*443 F.3d 676, 685 (9th Cir. 2006). Defendant, therefore, has the burden of showing that Plaintiff has Article III standing. *See Smelt v. County of Orange*, 447 F.3d 673, 682 (9th Cir. 2006) ("The burden of showing that there is standing rests on the shoulders of the party asserting it.") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). In evaluating whether a plaintiff has alleged a concrete injury sufficient to support Article III jurisdiction, the Court looks to the allegations of the operative complaint. *See Tailford v. Experian Info. Solutions, Inc.,* 26 F.4th 1092, 1100 n.2 (9th Cir. 2022).

Defendant does not and cannot satisfy its burden. In the operative complaint, Plaintiff alleges statutory violations of CEMA that do not constitute a concrete injury in fact for purposes of Article III standing. The CEMA violations that Plaintiff alleges do not closely resemble any traditionally-actionable harm. Because Plaintiff does not plead an injury in fact, Defendant cannot meet its burden of establishing Article III standing or this Court's subject matter jurisdiction. Remand to state court is therefore required.

**B. Plaintiff lacks Article III standing.**

Of the three elements of Article III standing—(1) an injury in fact that is; (2) fairly traceable to the challenged conduct; and (3) redressable by a favorable decision, *see Spokeo, Inc. v Robins*, 578 U.S. 330, 338 (2016)—injury-in-fact is the "first and foremost" requirement,



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

*id.* at 338–39 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)). An injury in fact must be both concrete and particularized. *See Spokeo*, 578 U.S. at 331; *Lujan*, 504 U.S. at 560. "A 'concrete' injury 'must actually exist'; put differently, it must be 'real, and not abstract.'" *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025) (quoting *Spokeo*, 578 U.S. at 340). This standard applies in the context of statutory violations. *Spokeo*, 578 U.S. at 341; *see TransUnion*, 594 U.S. at 427 ("Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." (emphasis in original)).

**1. Supreme Court and Ninth Circuit precedent require that a statutory violation resemble a traditionally recognized harm to be concrete.**

The Supreme Court distinguishes harms redressable by statute from harms that are redressable in federal court. *See TransUnion*, 594 U.S. at 426 (stating that the legislature's "creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III"). The Ninth Circuit has explained that "*TransUnion* requires a court to assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." *Popa*, 153 F.4th at 791; *see TransUnion,* 594 U.S. at 417 ("Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including . . . reputational harm." (quoting *Spokeo*, 578 U.S. at 340)). To do this, a court should consider "the *specific* underlying harm experienced by the plaintiff and compare it, in detail, to a *specific* common-law tort." *Popa*, 153 F.4th at 791 (emphasis in original).

In *Popa*, the Ninth Circuit explained that "*TransUnion* contemplates a standing inquiry particularized to a plaintiff's circumstances and benchmarked to a specific tort." *Popa*, 153 F.4th at 791. For example, the court explained that *TransUnion* "considered carefully the key



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

elements that shape the harm proscribed by" the tort of defamation, "grouped plaintiffs who alleged similar facts, and assessed whether the *specific* plaintiffs had experienced harm of that nature." *Id.* at 792 (emphasis in original). "The Court [then] determined that some plaintiffs had standing to bring a claim under the statute while others did not—an implicit rejection of a one-size-fits-all approach." *Id.* Applying that rule in an online privacy case, *Popa* rejected analogies to generalized privacy theories framed at a high level of abstraction: there was "no free-roaming privacy right at common law but rather four discrete torts that protected specific kinds of privacy-related harms." *Id.* (rejecting a "broad theory that the common law protected privacy rights—pitched at a high level of generality"). Rather, courts must analyze a plaintiff's *personalized* allegations of harm alongside the "key elements" of specific torts. *Id. Popa* therefore rejected the categorical approach under which an injury is considered "concrete" merely because the statute at issue protects a right that resembles one protected at common law.

**2. Plaintiff has not alleged a concrete injury-in-fact because Defendant's CEMA violations do not closely resemble any traditionally actionable harm.**

Courts have consistently found no concrete injury-in-fact in CEMA cases where, as here, there is no claim that the email was unsolicited, that the plaintiff took any action in reliance on it, or that the plaintiff was in fact deceived. For example, in *Montes v. Catalyst Brands LLC*, the court considered a CEMA claim based on allegedly misleading commercial email subject lines and concluded that the plaintiff failed to allege a concrete injury sufficient for Article III standing. No. 2:25-CV-0281-TOR, 2025 U.S. Dist. LEXIS 250731 (E.D. Wash. Dec. 4, 2025).[1] The court emphasized that a CEMA violation alone does not satisfy the injury

---

[1] *Montes* is currently on appeal, but the Court should not await the Ninth Circuit's decision. *See Montes v. Penney OpCo, LLC*, No. 25-8045 (9th Cir. Dec. 23, 2025) (appeal docketed) ("*Montes II*"). Notwithstanding the pendency of the *Montes II* appeal, numerous courts in this District have remanded CEMA email cases where the defendant cannot establish subject matter jurisdiction. *See, e.g.*, *Aronson v. 5 Star Apparel LLC*, No. C25-2691JLR, 2026 U.S. Dist. LEXIS 182526, at *6 (W.D. Wash. Aug. 4, 2026) ("Because Mr. Aronson fails to allege an injury-in-fact in his amended complaint, the court need not stay this case pending the resolution of *Montes II*."). A stay pending the Ninth Circuit's resolution of a standing question



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

requirement and that a plaintiff must allege a harm that "actually exist[s]," not merely the receipt of emails alleged to violate the statute. *Id.* at *5 (quotation omitted). The court explained that receipt of solicited marketing emails containing misleading subject lines does not resemble the privacy invasion or nuisance harms associated with *unsolicited* communications. *Id.* at *8–*9; *cf. Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (harm caused by unwanted telemarketing text messages resembles the harm redressable by the tort of intrusion upon seclusion because, like telemarketing calls, text messages involve a direct and immediate invasion of personal privacy).

Other courts in this District have since followed suit, holding that a CEMA claim unaccompanied by allegations that the email was unsolicited, that the plaintiff took any action in reliance on it, or that the plaintiff was in fact deceived, alleges only a procedural violation that by itself does not manifest concrete injury. *See, e.g.*, *Wade v. Elemis USA, Inc.*, No. C26-0515-KKE, 2026 U.S. Dist. LEXIS 191472, at *7 (W.D. Wash. Aug. 25, 2026) ("Because [the] complaint does not include allegations identifying any real or appreciable harm that [the plaintiff] suffered as a result of [the defendant] sending her emails . . . ., the Court finds that she has failed to state a sufficient injury in fact to satisfy Article III."); *Stutsman v. Sirius XM Radio LLC*, No. 2:25-cv-01113-LK, 2026 U.S. Dist. LEXIS 187829, at *10 (W.D. Wash. Aug. 20, 2026) ("This Court follows an ever-growing list of decisions finding that the mere receipt of alleged misleading or false marketing email subject lines, absent any allegation of economic loss, detrimental reliance, or any comparable injury, does not constitute a concrete harm sufficient to establish Article III injury."); *Aronson v. 5 Star Apparel LLC*, No. C25-2691-JLR,

---

in another case would be inappropriate because subject matter jurisdiction is an antecedent question that should be resolved before a federal court exercises discretionary authority over a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). As the proponent of jurisdiction, Defendant has the burden of establishing Article III standing ***now***, based on ***this plaintiff's*** specific allegations, when jurisdiction in ***this Court*** is in question. If that burden is not met, remand is mandatory. 28 U.S.C. § 1447(c) ("If ***at any time*** before final judgment it appears that the district court lacks subject matter jurisdiction, the case ***shall*** be remanded." (emphasis added)).



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

2026 U.S. Dist. LEXIS 182526, at *5 (W.D. Wash. Aug. 4, 2026) (no standing where plaintiff "alleges that [he] provided his email address to [Defendant] via its online store, that he received emails from [Defendant] with false or misleading subject lines, and that he opened some of those emails"); *Hutton v. Papa John's USA, Inc.,* No. C25-1922-KKE, 2026 U.S. Dist. LEXIS 170894, at *8 (W.D. Wash. July 31, 2026) ("Because [the] complaint does not include allegations identifying any real or appreciable harm that he suffered as a result of [the defendant] sending him emails, the Court finds that he has failed to state a sufficient injury in fact to satisfy Article III."); *Nuri v. True Religion Apparel*, No. 2:25-cv-00690-LK, 2026 U.S. Dist. LEXIS 67871, at *10 (W.D. Wash. Mar. 30, 2026) ("The mere 'receipt of alleged misleading or false marketing email subject lines from a solicited company,' absent any allegation of 'economic loss, detrimental reliance, or any comparable injury,' does not 'constitute a concrete harm.'" (quoting *Montes*, 2025 U.S. Dist. LEXIS 250731, at *7)).

Consistent with this authority, Defendant's alleged CEMA violations here do not satisfy the "traditionally actionable harm" test. Plaintiff does not allege that the emails transmitted by Defendant were unsolicited. To the contrary, Plaintiff alleges that he placed online orders on Defendant's website and that he would like to continue receiving truthful product information from Defendant. Compl. ¶¶ 36–37. The complaint is also devoid of any allegations concerning Plaintiff's opening or reading of, or reliance on, Defendant's marketing emails with false and misleading subject lines. Plaintiff also does not allege that the misleading subject lines caused any confusion, deception, or pecuniary loss. Plaintiff alleges, quite simply, that he has received and continues to receive Defendant's marketing emails with various types of false and misleading subject lines—thousands of them. *See* Compl. ¶¶ 34–35, 38.

As in *Montes* and the recent decisions cited above, Plaintiff alleges exposure to allegedly misleading subject lines while continuing to welcome truthful marketing communications from Cole Haan, a store he has patronized in the past. *Montes*, 2025 U.S.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

Dist. LEXIS 250731, at *8; Compl. ¶ 37. And, as in *Montes* and those cases, "Plaintiff does not allege an economic loss, detrimental reliance, or any comparable injury." *Montes*, 2025 U.S. Dist. LEXIS 250731, at *7. That is sufficient for a CEMA claim. *See Kempf v. Fullbeauty Brands Operations, LLC,* No. C25-1141-TSZ, 2026 U.S. Dist. LEXIS 29632, at *13-14 (W.D. Wash. Feb. 12, 2026). It is not sufficient for Article III.

Any attempt by Defendant to mischaracterize Plaintiff's allegations to falsely drum up concrete harm should be rejected. For example, the complaint explains Defendant's misleading advertising practices and their effects on the consumer experience ***generally***, explaining how various techniques "create a sense of urgency that changes consumer decision making" and "influence consumer behavior in a deceitful way." Compl ¶ 16. Those allegations describe the misleading nature and systemic effects of each asserted statutory violation. For standing purposes, courts ignore background allegations such as these—which may go to the merits—and focus instead on the harms a plaintiff *personally* experienced. *See TransUnion*, 594 U.S. at 417, 442 (finding standing for only those "class members whose credit reports were provided to third-party businesses" despite the entire class alleging that TransUnion "fail[ed] to use reasonable procedures to ensure the accuracy of their credit files").

Plaintiff did not plead any harm with a "close relationship" to a traditionally recognized common-law tort, such as fraud or deceit. *TransUnion*, 594 U.S. at 424. To the contrary, he alleges receipt of statutorily prohibited communications—without claiming he was confused, deceived, or otherwise affected by those communications—which is precisely the "bare procedural violation, divorced from any concrete harm" that *TransUnion* held insufficient. *Id.* at 442. Because Plaintiff has not alleged, and Defendant cannot identify, any concrete harm that resembles an injury recognized under common law, its standing theory cannot satisfy Article III. The Court therefore lacks subject matter jurisdiction.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

## IV. CONCLUSION

Because Defendant has failed to demonstrate that Article III standing exists, this Court lacks subject matter jurisdiction, and this case should be remanded to King County Superior Court.

DATED this 11th day of September, 2026.

*I certify that this memorandum contains 2,927 words, in compliance with the Local Civil Rules.*

MCNAUL EBEL PLLC

*By: s/ Kaleigh N. Boyd*
Kaleigh N. Boyd, WSBA #52684
600 University Street, Suite 2700
Seattle, WA 98101
Tel: 206-467-1816
Fax: 206-624-5128
Email: kboyd@mcnaul.com

Edwin J. Kilpela, Jr. (*pro hac vice* forthcoming)
WADE KILPELA SLADE LLP
6425 Living Place, Suite 200
Pittsburgh, PA 15206
Tel: 412-314-0515
Email: ek@waykayslay.com

Evan E. North (*pro hac vice* forthcoming)
NORTH LAW PLLC
1900 Market Street, Suite 800
Philadelphia, PA 19103
Tel: 202-921-1651
Email: evan@northlawpllc.com

*Attorneys for Plaintiff and the Proposed Class*